UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHERYL D. PETERSON,            )<br>                                                 )<br>            Plaintiff,                    )<br>                                                 )<br>    v.                                         )<br>                                                 )<br>                                                 )<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security Administration,    )<br>                                                 )<br>            Defendant.                   )<br>_____ ) | Case No. C07- 173 JCC-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Cheryl D. Peterson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED and this case DISMISSED with prejudice.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-three year old woman with a tenth grade education. Administrative Record ("AR") at 234, 125. Her past work experience includes employment as a painter, hand packager, and painter helper. AR at 977. Plaintiff was last gainfully employed in 1996. AR at 114.

On December 19, 2000, plaintiff filed a claim for SSI payments. On January 23, 2001,

REPORT AND RECOMMENDATION
PAGE - 1

she filed an application for DIB. Both claims were denied on August 1, 2001. She failed to file a request for reconsideration, but did request a hearing, which was denied for lack of a reconsideration determination. AR at 16. A subsequent request for reconsideration was filed but the request was denied on August 22, 2002. A hearing began on June 17, 2004. AR at 944. The hearing was continued until November 4, 2004, but was thereafter held open to receive updated medical records regarding the plaintiff's drug treatment. AR at 971. After the receipt of records, the ALJ issued her decision on August 25, 2005. AR at 16-33.

Plaintiff requested administrative review of the ALJ's decision, which the Appeals Council denied. AR at 9-11. Consequently, the ALJ's decision serves as the Commissioner's final decision for purposes of judicial review. 42 U.S.C. § 405(g). On February 1, 2007, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence

is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Peterson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at

any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE - 4

On August 25, 2005, the ALJ issued a decision finding:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has the following "severe" impairments: substance abuse disorder, degenerative disc disease of the lumbar spine, degenerative disc disease in the cervical spine, degenerative joint disease of the right shoulder, and shortness of breath.

4. None of the claimant's impairments meets or equals the criteria of any impairment included in the Listing of Impairments.

5. The claimant's allegations regarding her limitations cannot be fully credited, for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity, when taking the effect of her substance abuse disorder into consideration: she is able to lift 20 pounds frequently, limited by the degenerative disc and joint disease of her lower back, neck and right shoulder.  She is able to sit, stand, and/or walk for six hours in an eight hour workday.  Because of her lower back, neck, and right shoulder pain, the claimant is able only to occasionally climb, crouch, stoop, and crawl, but can frequently balance and occasionally to frequently kneel.  The claimant's pain also requires that she avoid concentrated exposure to extreme cold, vibration, and hazards.  Her shortness of breath also requires that she avoid concentrated exposure to cold.  Her substance abuse disorder requires that the claimant periodically lie down throughout the day and may fall asleep during the day.

7. Disregarding the effects of the claimant's substance abuse disorder, she has the same residual functional capacity, but without the requirement that she periodically lie down throughout the day and may fall asleep during the day.

8. The claimant's past relevant work was in the following jobs: (1) painter, shipyard, Dictionary of Occupational Titles (DOT) #840.381-015, which is medium, skilled work; (2) hand packager, DOT # 920.587-015, which is medium, unskilled work; and (3) painter helper, automotive, DOT # 845.684-014, which is medium, semi-skilled work.  The claimant is unable to perform any of her past relevant work.

9. During the period at issue, the claimant was first a "younger individual" and then an "individual closely approaching advanced age" under the regulations.

10. The claimant has "a limited education" according to the regulations.

REPORT AND RECOMMENDATION
PAGE - 5

| | | |
|---|---|---|
| | 11. | The claimant has no transferable skills from any of her past relevant work. |
| | 12. | The claimant has the residual functional capacity to perform a significant range of light work. |
| | 13. | When using drugs and/or alcohol, the claimant is unable to make an adjustment to work that exists in significant numbers in the national or regional economy. |
| | 14. | The claimant's substance abuse disorder is a factor that is material to the finding of disability. |
| | 15. | Without the effect of drugs and/or alcohol and using Medical-Vocational Rules 202.18 or 202.11 as a framework for decision-making, there are significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a (1) potato chip sorter, DOT # 521.687-010, which is light to sedentary, unskilled work, of which 57,357 jobs exist in the national economy and 5,480 exist in the region; (2) nut/almond sorter, DOT # 521.687-086, which is sedentary, unskilled work, of which 56,000 jobs exist in the national economy and 5,000 in Washington; (3) bench assembly of small parts, miscellaneous plastic products, DOT # 706.684-022, which is light, unskilled work, of which 37,400 jobs exist in the national economy and 6,200 in Washington. |
| | 16. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. |

AR at 31-32.

## VI. ISSUES ON APPEAL

The plaintiff has filed two previous applications for disability benefits. The first, filed on March 15, 1999, was denied initially and then on reconsideration on December 1, 1999. No further action was taken on this claim. AR at 17. She applied for benefits again on May 16, 2000, which claim was denied initially on August 9, 2000. No further action was taken on this claim. *Id.* In the claim presently before the Court, the plaintiff has alleged a disability onset date of December 31, 1996, which precedes the previous filing dates, thereby implying a request to reopen the earlier claims. The ALJ denied this request, holding that the denials of the prior applications were administratively final, and that the application therefore covered a relevant period beginning August 10, 2000, the day after the determination of the previous application. AR at 17. In her current appeal, the plaintiff does not challenge the ALJ's decision denying the request to reopen the earlier claims. The claimant's date last insured is

01  December 31, 2001. AR at 17. Accordingly, the issues before the Court relate to the ALJ's

02  decision that the plaintiff was not disabled between the period of time beginning August 10,

03  2000 and ending on December 31, 2001.

04      The plaintiff raises two principal issues on appeal:

05      1.    Did the ALJ err in her treatment of the medical opinions of Drs. Nilson, Hughs, and Pavliscak?

06

07      2.    Did the ALJ err in her drug and alcohol abuse ("DAA") analysis?

Dkt. No. 15 at 20-25.

08
## VII. DISCUSSION

09
    A.    <u>The ALJ Did Not Err in Her Treatment of the Medical Opinions of Drs. Nilson, Hughs and Pavliscak.</u>

10

11      1.    *Standards for Evaluating Medical Opinion Evidence*

12  As a matter of law, more weight is given to a treating physician's opinion than to that

13  of a nontreating physician because a treating physician "is employed to cure and has a greater

14  opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

15  *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "Likewise, greater weight is

16  accorded to the opinion of an examining physician than a non-examining physician." *Andrews*,

17  53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).

18  A treating physician's opinion, however, is not necessarily conclusive as to either a

19  physical condition or the ultimate issue of disability, and can be rejected, whether or not that

20  opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a

21  treating or examining physician, the ALJ must give clear and convincing reasons for doing so

22  if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.

23  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a

24  detailed and thorough summary of the facts and conflicting clinical evidence, stating his

25  interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The

26  ALJ must do more than merely state his conclusions. "He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The plaintiff argues that the ALJ rejected or otherwise discounted the opinions of Drs. Nilson, Hughs, and Pavliscak without a "clear and convincing" or "specific and legitimate" basis. Dkt. No. 15 at 20-23.

               2.     *Dr. Nilson and Dr. Hughs*

Plaintiff asserts that in December 1994, Dr. Karen L. Nilson, a treating physician, opined that the plaintiff could not stand or walk for prolonged periods of time, and was limited in lifting more than ten pounds. Dkt. No. 15 at 21; AR at 796. The ALJ's RFC analysis determined that the plaintiff could sit, stand and/or walk six hours in an eight hour day, and that she could lift twenty pounds. AR at 31.

Plaintiff also asserts that the ALJ ignored the opinion of Dr. Charles G. Hughs, who treated the plaintiff from May 1, 1996 through December 1, 1998. Dkt. No. 15 at 22; AR at 349-64. Dr. Hughs included in his notes the notation "[plaintiff] is totally disabled and needs medical attention." AR at 355.

The ALJ's opinion does not make reference to either Drs. Nilson or Hughs. However, there was no requirement to do so. The opinion of Dr. Nilson relates to a time prior to plaintiff's alleged onset date, and the opinions of both doctors related to a period during which plaintiff was found to be not disabled, in two separate hearings. As discussed above, the ALJ found there was no showing of good cause to reopen the prior applications, and the prior denials became administratively final. AR at 17. In *Krumpelman v. Heckler*, 767 F.2d 586 (9th Cir. 1985), *cert. denied*, 475 U.S. 1025 (1986), the court held that the Commissioner's decision not to reopen prior applications is not subject to judicial review, and as a result, prior determinations are entitled to *res judicata* effect. Moreover, when a claimant does not seek reconsideration of an initial decision denying disability benefits, the initial determination

01 becomes binding and is considered to be the final decision of the Commissioner, barring

02 subsequent review of the claim. *Taylor v. Heck*, 765 F.2d 872, 876 (9th Cir. 1985).

03       Because the opinions of Drs. Nilson and Hughs do not relate to the relevant time

04 period — August 10, 2000 through December 31, 2001— they are not probative.  An ALJ is

05 not required to discuss non-probative evidence.  *Vincent ex rel. v. Heckler*, 739 F.2d 1393,

06 1394-95 (9th Cir. 1984).  The ALJ did not err with respect to the opinions of Drs. Nilson and

07 Hughs.

08       3.    *Dr. Pavliscak*

09       In June 2004, the plaintiff saw Dr. Jill Pavliscak, who diagnosed her as suffering from

10 right shoulder rotator cuff tendonitis, degenerative disc disease, scoliosis, and depression.  AR

11 at 618.  She opined that the plaintiff was "very limited" in her ability to balance, bend, climb,

12 crouch, handle, kneel, push, reach, sit, and stoop.  *Id.*  She also found the plaintiff had "very

13 significant interference with the ability to perform one or more basic work-related activities,"

14 and initially opined that she could perform no more than sedentary work, but then scratched

15 that statement and wrote "severely limited."  *Id.*  Plaintiff asserts that the ALJ improperly

16 ignored these opinions.  Dkt. No. 15 at 22-23.

17       The ALJ provided clear and convincing reasons for rejecting portions of Dr.

18 Pavliscak's opinions.  The primary reason related to the inconsistencies of the plaintiff's

19 behavior during her medical examinations.  For example, the ALJ noted that on February 11,

20 2004, during a visit with Dr. Pavliscak, the doctor reduced the plaintiff's range of neck motion

21 due to the plaintiff's pain complaints.  However, when she appeared at an emergency room

22 visit three weeks later for foot pain, the treating physician noted that her neck was "supple

23 with full range of motion."  AR at 26.  Similarly, during a February 13, 2004 meeting with Dr.

24 Pavliscak, the plaintiff indicated that her pain was worse, causing her to use more methadone

25 than usual, and in the examination room the plaintiff moved slowly and moaned with pain.

26 However, when Dr. Pavliscak saw the plaintiff in the parking lot, she was "moving about

REPORT AND RECOMMENDATION
PAGE - 9

easily [with] no evidence of pain." AR at 27.  On March 3, 2004, during an examination by Dr. Pavliscak, plaintiff rated her shoulder pain at six to eight and complained of pain with the range of motion testing.  However, at an emergency room visit three weeks later, the plaintiff demonstrated a full range of motion in all of her joints.  AR at 26.

These types of contradictions provide "a clear and convincing reason for not relying on the doctor's opinion." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Moreover, the ALJ found that she could not fully credit plaintiff's allegations regarding her limitations due to inconsistencies in her statements of pain and decreased functioning.  AR at 27, 28.  The plaintiff does not challenge these findings or this analysis.

The role of this Court is limited.  As noted previously, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039.  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusions must be upheld.  *Thomas*, 278 F.3d at 954.  It is possible to interpret the medical evidence in the fashion urged by the plaintiff.  In this case, however, it simply cannot be said that the only rational interpretation of the medical evidence is that which is advanced by the plaintiff.  The ALJ did not err in her assessment of Dr. Pavliscak's opinions.

B. The ALJ Did Not Err in Her DAA Analysis

Pursuant to the Contract with America Advancement Act, an "individual shall not be considered to be disabled for purposes of [Title II and Title XVI benefits] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  Pub. L. No. 104-121, 110 Stat. 847 (March 19, 1996) (codified at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).  Before applying this statute, however, an ALJ must first conduct the five-step sequential evaluation process and conclude that the claimant is disabled.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  If a claimant is found to be disabled and there is medical evidence of

plaintiff's substance abuse, the ALJ must then apply the sequential evaluation process a second time to determine whether plaintiff would still be disabled if he or she stopped using. *Id*.

In this case, the ALJ's analysis followed the holding in *Bustamante*. The ALJ determined that a hypothetical individual with the plaintiff's RFC would normally be unable to maintain competitive work. AR at 29. However, the ALJ also found that the plaintiff's drug and/or alcohol abuse was material to her disability. This finding was amply supported by substantial evidence as set forth in the ALJ's opinion. AR at 30.

The plaintiff does not seriously contest this analysis. She states only:

> Here, scrutiny of the ALJ's decision reveals that she considered Plaintiff's work limitations when she included Plaintiff's heroin addiction and properly considered Plaintiff's limitations when she excluded her addiction, as required by law.
>
> Significantly however, further scrutiny shows that the ALJ improperly ignored the medical opinions of Plaintiff's treating doctors, in *both* of her assessments of Plaintiff's limitations, both when she included Plaintiff's addiction and then she excluded it.

Dkt No. 15 at 24-25.

The argument advanced by the plaintiff is difficult to understand. To the extent that she is contending that the ALJ did not properly consider the medical opinions of the plaintiff's treating physicians, this argument is rejected for the reasons set forth above. Furthermore, the plaintiff bears the burden of showing that her substance addiction disorder is not a material factor contributing to her disability. *Parra v. Astrue*, 481 F.3d 742, 747-50 (9th Cir. 2007). Plaintiff did not do so at her hearing or in her brief before this Court. The ALJ did not err in her DAA analysis.

C.  The ALJ's Opinion Is Supported by Substantial Evidence.

The plaintiff also makes a somewhat difficult-to-understand argument that the ALJ's opinion is not supported by substantial evidence, because at the time of the hearing, the ALJ offered the plaintiff a chance to change her alleged onset date to January 2004 and stated that the record "does support a limitation of sedentary work." AR at 976. Accordingly, the

plaintiff argues that the ALJ ignored evidence pertinent to a finding of disability and claims that the resulting decision was not based on "substantial evidence." Dkt. No. 15 at 23-24.

In making this argument, the plaintiff ignores the statement of the ALJ prior to the quoted material where he states, "[a]nd I'm noting on the record going back to the alleged onset date, there is a significant involvement of heroine and lack of credibility in the record and pain behaviors." AR at 975-76. The plaintiff ignores the fact that the record was left open and was later supplemented. AR 16, 817-923. It is the obligation of the ALJ to consider all of the evidence and to develop the record as appropriate. 20 C.F.R. § 416.912(e). The fact that the ALJ reached the ultimate conclusion, after review of all evidence, that the record supported a finding of an ability to perform light exertional work activities rather than being limited to sedentary activities does not mean the decision is not supported by substantial evidence. The term substantial evidence is defined as "more than a scintilla, less than a preponderance, and . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson* 402 U.S. at 401. The ALJ's opinion certainly satisfies this standard, and there is no basis offered by the plaintiff to conclude otherwise.

## VIII.  CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED and this case DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 23rd day of October, 2007.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge